RUSSELL A. HART
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 North 27th Street, Suite 401
Billings, MT 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
russell_hart@fd.org
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GABRIEL COWAN METCALF,<br><br>Defendant. | **Case No. MJ-23-130-BLG-TJC**<br><br>**DETENTION HEARING MEMORANDUM** |

COMES NOW the Defendant, Gabriel Cowan Metcalf, by and through his attorney of record, and hereby submits this Memorandum for the Court's consideration at the Detention Hearing currently set for September 21, 2023.

## BACKGROUND

A Criminal Complaint was filed in this matter on August 21, 2023, alleging a factual basis from which flowed the assertion Mr. Metcalf violated 18 U.S.C. § 922(q)(2)(A) between August 2, 2023, and August 17, 2023. Doc. 1. Mr. Metcalf's

initial appearance was held August 23 and a detention hearing followed the next day. Doc. 5, 10. The Court then issued an Order of Detention whereby it found the Government had proven by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person in the community. Doc. 11. The Court stated the sum of its findings orally at the hearing and indicated in its Order the Defendant's "history of violence or use of weapons" as the reason for his continued detention. *Id*.

On September 8, 2023, Mr. Metcalf filed a report under seal and a Motion seeking to reopen the issue of detention based on information that was not known to him at the time of his first hearing and which is material to the considerations required by 18 U.S.C. § 3142(g). On September 14, 2023, an Indictment was filed alleging violation of § 922(q) committed on or between the same dates as was indicated in the Complaint. The United States opposed Mr. Metcalf's Motion, the matter was fully briefed, and the Court set a detention hearing for September 21, 2023, the same time as his Arraignment.

## APPLICABLE LAW

In determining whether any conditions of release will reasonably assure the appearance of a defendant as required and the safety of any other person in the community, 18 U.S.C. § 3142(g) requires the Court to consider the nature and circumstances of the offense charged, the weight of the evidence against the person,

the history and characteristics of the person and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. At the August 24, 2023, hearing, the Court determined Mr. Metcalf does not pose a risk of flight and made clear his continued detention rests upon concerns related to the safety of the community at large.

## I. The Nature of the Offense Charged

When it comes to the "nature of the offense charged", Mr. Metcalf stands accused of a misdemeanor offense. The penalty provision for this offense, 18 U.S.C. § 924(a)(4) states as follows:

> Whoever violates section 922(q) shall be fined under this title, imprisoned for not more than 5 years, or both. Notwithstanding any other provision of law, the term of imprisonment imposed under this paragraph shall not run concurrently with any other term of imprisonment imposed under any other provision of law. **<u>Except for the authorization of a term of imprisonment of not more than 5 years made in this paragraph, for the purpose of any other law a violation of section 922(q) shall be deemed to be a misdemeanor</u>**.

Emphasis added.

At this fast-moving stage of the proceedings Counsel has identified three out-of-circuit appellate decisions addressing the classification of a §922(q) offense: *United States v. Corn*, 47 F.4th 892 (8th Circuit, 2022), *United States v. Grant*, 665 Fed. Appx. 304 (4th Circuit, 2016), and *United States v. Alvira-Sanchez*, 804 F.3d 488 (1st Circuit, 2015).

Each case follows a similar pattern: each defendant was convicted under § 922(q)(2)(A) then sentenced to a term of supervised release that exceeded the statutory maximum allowed for a misdemeanor. While these cases, in Mr. Metcalf's view, support his assertion that §922(q) is a misdemeanor, each Court declined to squarely answer the question. No defendant objected to the term of supervised release at their respective sentencing hearings. In each case, the defendant raised the misdemeanor language of 924(a)(4) for the first time on appeal arguing the term of supervised release should not have exceeded the statutory maximum of one year for a misdemeanor offense. 18 U.S.C. § 3583(b). In each case, the majority employed the clear error standard of review and sidestepped the issue of whether § 922(q) is a misdemeanor or a felony.

Mr. Metcalf asserts at the outset that § 922(q) is a misdemeanor offense based upon the plain language of § 924(a)(4), which speaks specifically to the statute of the offense charged in this case[1]. This bears upon the "nature of the offense charged" consideration of § 3142(g).

In *Corn*, the Defendant was sentenced to a three-year term of supervised release for violating § 922(q), and he received a sentence of 20 months in a subsequent revocation proceeding. He appealed that sanction and argued the Court

[1] The Indictment charges Mr. Metcalf with violating 18 U.S.C. § 922(q)(2)(A), and states he is subject to five years imprisonment, a $100,000 fine, and three years of supervised release (Doc. 21). The portion of the Indictment that references the maximum term of supervised release is, respectfully, incorrect.

only had jurisdiction over his revocation for 12 months because § 924(a)(4) specifically states that § 924(q) is a misdemeanor for the purpose of any law other than the maximum term of imprisonment allowed (the law authorizing imposition of a term of supervised release, 18 U.S.C. § 3583(b), being the "other law"). *Corn*, at 894-895. The Government responded that § 922(q) is not a misdemeanor for purposes of the imposition of a term of supervised release: "the availability of a three-year term of supervised release follows directly from 'the authorization of a term of imprisonment of not more than 5 years made in this paragraph,' 18 U.S.C. § 924(a)(4), the misdemeanor classification 'for the purpose of any other law' does not apply." *Id*., at 895. Put simply, the Government argued that, despite the misdemeanor language in § 924(a)(4), violation of the Gun Free School Zones Act is a felony.

The 8th Circuit did not adopt the argument of Corn or the Government, and instead held that Corn invited the district court to treat § 922(q) as a felony for purposes of calculating his term of supervised release: he had signed a plea agreement stating § 922(q) authorized a term of supervised release up to five years, argued for two years of supervised release at sentencing, and requested a sentence of one year and one day at his revocation hearing, which itself would have exceeded the limits of the district court's jurisdiction as he argued on appeal. *Id*. at 896.

Circuit Judge Grasz, dissenting, doubted the "invited error" doctrine's applicability and called "the illegal sentence imposed" a "manifest injustice". *Id*. at 898.

In *United States v. Grant* and *United States v. Alvira-Sanchez*, the defendants, like *Corn*, did not raise this issue prior to sentencing. However, both Grant and Alvira-Sanchez made arguments similar to those advanced by Corn on direct appeal of their sentences. In *Grant*, the 4th Circuit held that the district court's treatment of § 922(q) as a Class D felony was not plainly erroneous because "it is perhaps possible to read that provision in conjunction with § 3559's classification scheme in a way that would make § 922(q) a felony offense." *Grant*, at 308. In *Alvira-Sanchez*, the 1st Circuit used similar language when considering the defendant's argument: "one could construe 18 U.S.C. § 924(a)(4) as establishing that a § 922(q) offense is a misdemeanor except where misdemeanor and felony are distinguished by their authorized terms of imprisonment." *United States v. Alvira-Sanchez*, 804 F.3d 488, 494-495.

In each case, the Circuits determined the district court's interpretations were not clearly erroneous and did not rule on whether § 922(q) is a felony or a misdemeanor. The decisions in *Alvira-Sanchez* and *Grant* rest upon the law not being obvious to the sentencing court under a clear error standard of review, while *Corn* relied upon the invited error doctrine. The majority of each Court strained to avoid explicitly affirming that § 922(q) is a misdemeanor – stretching so far as the

"perhaps possible" standard – but the sum of these decisions strongly suggest that it is. Judge Grasz, the only jurist to make a decision on the issue, determined in his *Corn* dissent that § 922(q) is, indeed, a misdemeanor.

The confusion comes from 18 U.S.C. § 3559, which provides for the sentencing classification of offenses. This statute states that a crime punishable by less than 10 years but 5 years or more is a Class D felony, while a Class A misdemeanor is punishable by 1 year or less but more than 6 months. § 3559(a)(4,7). As stated previously, § 924(a)(4) speaks specifically to the charged offense in this case: "Except for the authorization of a term of imprisonment of not more than 5 years made in this paragraph, for the purpose of any other law a violation of section 922(q) shall be deemed to be a misdemeanor".

The statute is confusing, but the "nature" of the offense charged against Mr. Metcalf is that of a misdemeanor. This misdemeanor is uniquely subject to a higher sentencing penalty – specific to § 922(q) – than what § 3559 generally classifies as a misdemeanor. The statutes are in conflict, but § 924(a)(4) is specific to the charged offense. Unlike in *Corn*, *Alvara-Sanchez* and *Grant*, Mr. Metcalf notes the grade of the charged offense at the outset as the Court considers its nature for purposes of

detention: Mr. Metcalf has been charged with a misdemeanor offense subject to imprisonment of up to five years. It is a Misdemeanor with a capital "M".[2]

## II. Circumstances of Offense and Weight of the Evidence Against Mr. Metcalf.

The circumstances of the offense, as characterized in the Affidavit filed in support of the Complaint and testified to twice in these proceedings, concern a citizen who received credible threats against his safety and is alleged to have responded by openly carrying a firearm on his property and the area immediately surrounding it for self-defense. The alleged criminality concerns only the location of his house, which is not on the grounds of but within 1,000 feet of a school. Prior to the alleged offense conduct, he had made several previous reports to law enforcement of a violation of an order of protection. An officer testifying in earlier proceedings characterized responding to to these calls as "chasing ghosts".

The "ghost" exists: the source of these threats, who is explicitly named in the Affidavit, is set to stand trial on January 2, 2024, for felony violation of a protective order against Metcalf's mother. *See* DC-56-2023-0000397, Montana Thirteenth

---

[2] The applicable Guideline for the charged offense is USSG §2K2.5. The base offense level is 6, and the alleged conduct suggests a 2-point enhancement for possessing a firearm in a school zone. While this calculation is very premature, no enhancements are apparent from what has been disclosed as of this filing. Additionally, Mr. Metcalf does not appear to have any scorable criminal history. If Mr. Metcalf were to take advantage of his first trial setting, be found guilty, and remain in custody until sentencing, it appears he would face a guideline range of 0-6 months and be subject to supervised release for a maximum of one year even without the benefit of a downward adjustment for acceptance of responsibility (CHC I, Offense Level 8). He will likely have been incarcerated beyond the high-end of his applicable Guideline range by the time of Sentencing, if it occurs. He has already been incarcerated one month more than the low-end of that range.

Judicial District Court, Yellowstone County, Motion for Leave to File Information with Supporting Affidavit attached as Exhibit A. On August 29, 2022, an order of protection was issued in favor of Mr. Metcalf's mother enjoining this individual from coming within 1,500 feet of their residence. *Ex. A.* On October 7, 2022, Metcalf's mother reported this person "had been driving through the alley behind her home on an ongoing basis." *Id*. In Montana, elevation of the offense for violation of an order of protection to a felony requires at least two previous Misdemeanor convictions for the same conduct, which this individual has accumulated. Mont. Code Ann. § 45-5-626(3). That reports alleging additional violations were made to law enforcement after October 7, 2022, and leading up to August of 2023 is not in dispute. The Government's witness was wholly dismissive of these concerns at the August 24 hearing.

He isn't making it up, he is not delusional, and the pending prosecution suggests the State of Montana is concerned this person is a danger to Mr. Metcalf and his family. The report at Doc. 15 supports the notion Mr. Metcalf was sincerely fearful of what his stalker might do based on past interactions, and he perceived a profound indifference in law enforcement's response to his reports. Whether law enforcement did enough to investigate these claims may be the subject of later debates, but Mr. Metcalf's stalker is clearly no ghost.

Mr. Metcalf is not asking the Court to release a delusional person. His fear was sincere and rational and the abuse that caused it was unprecedented in the quiet life he'd led to that point. While reasonable minds can disagree on what constitutes a reasonable reaction, the source of what led Mr. Metcalf to believe action was necessary should be incredibly apparent at this point. If released, Mr. Metcalf will have assistance making a report to law enforcement that will be taken seriously and meaningfully addressed. He will likely make that report while this case is pending and will enjoy the right to have counsel present when he gives any statement. Counsel will work to ensure the Metcalf's receive the full benefit of resources available through the Victim Advocate, and that any future report will not be so flippantly disregarded. The Court will not be releasing Mr. Metcalf into the same situation that led to his arrest.

Additionally, Mr. Metcalf demonstrated willingness to modify his behavior during contacts with law enforcement prior to his arrest. He was contacted by federal agents on August 17, who informed him of their belief his actions violated § 922(q)(2)(A).[3] Following that conversation, as indicated by the date-range cited in

[3] As detailed in the Affidavit, the agents purport to have elicited several statements from Mr. Metcalf over the phone. This call was presented to Mr. Metcalf by the agents as a response to an inquiry Mr. Metcalf had made to the FBI concerning his frustration with local law enforcement refusing to address his complaints about the order of protection violations: they were calling to help. Agents briefly let Mr. Metcalf make his report, in which he expressed gratitude that someone was going to finally "hear me out". Agents told Mr. Metcalf they wanted to get some "precursor information", then proceeded to ask several questions concerning where and when Metcalf carried his firearm before advising him of their belief that he had violated 18 U.S.C. § 922(q)(2)(A) and lecturing him about "social norms" as it came to any constitutionally protected actions on his private property. Mr. Metcalf was not advised of his rights under *Miranda v. Arizona* at any point. While Mr. Metcalf does not seek to litigate that issue in his detention proceedings, it is relevant to the weight of the evidence against him.

the Indictment and testimony at the Augusin24, 2023, Detention Hearing, Mr. Metcalf stopped carrying the firearm on any area that could be construed as not being squarely within his property.

Mr. Metcalf understands any release order would restrict his right to possess firearms while his case is pending and recognizes that the Court's order will not make the threat he faced prior to his arrest go away. If he is released, he will be subject to strict conditions. He will have been incarcerated for one month by the time the Court addresses him. The Court has the benefit of Doc. 15 and further clarification of the circumstances leading up to the offense conduct alleged by the Government.

**III. The History and Characteristics of Mr. Metcalf, and the Nature and Seriousness his release would pose to the community.**

While Mr. Metcalf's history and characteristics have been addressed at previous hearings, they bear additional consideration following submission of Doc. 15. He is 49 years old, and his bond report notes a DUI arrest in 1991 when he was 17. He has no other adult or juvenile arrests or convictions. On September 8, 2023, Mr. Metcalf filed a Report of Psychological Examination under seal with the Court. The psychologist who prepared that report did not observe any indications of psychotic thinking or incompetency and found him to be coherent and rational. They found Metcalf's fear for his safety to be sincere and his thinking to be reasoned. Doc. 15. To presume he will try to find a firearm if he's released on conditions that

prohibit him from doing so is a leap the facts simply do not justify given the information before the Court.

## CONCLUSION

Mr. Metcalf is currently detained pending prosecution for an alleged misdemeanor offense, and he has already been incarcerated for one month longer than the low-end of what is likely to be his applicable guideline range. The conduct alleged by the Government is covered by the plain text of the Second Amendment and the Constitution presumptively protects that conduct. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2117 (2022). The Court was transparent and thorough in its reasons for sustaining the Government's motion for detention on August 24, and its concerns were confined to the offense conduct alleged in the Complaint (Doc. 1).

The Court now has the benefit of Doc. 15 and confirmation that Mr. Metcalf did not merely imagine the threat facing him as was stated in earlier proceedings in support of detention. He has no criminal history at 49 years of age and stands accused of a Misdemeanor offense for the first time in his adult life: the Court cannot presume Mr. Metcalf would violate any condition of release, especially one that would constitute a felony offense under 18 U.S.C. § 922(d)(1).

RESPECTFULLY SUBMITTED this 19th day of September, 2023

/s/ Russell A. Hart
RUSSELL A. HART
Federal Defenders of Montana
Counsel for Defendant

**CERTIFICATE OF SERVICE**
**L.R.5.2(b)**

I hereby certify that on September 19, 2023, a copy of the foregoing document was served on the following persons by the following means:

1, 2 CM-EDF
____ Hand Delivery
3 Mail
____ Overnight Delivery Service
____ Fax
____ E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. THOMAS K. GODFREY
Assistant United States Attorney
United States Attorney's Office
2602 2nd Avenue North, Suite 3200
Billings, MT 59101
Counsel for the United States of America

3. GABRIEL COWAN METCALF
Defendant

/s/ Russell A. Hart
RUSSELL A. HART
Federal Defenders of Montana
Counsel for Defendant