RUSSELL A. HART
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 North 27th Street, Suite 401
Billings, MT  59101
Phone:  (406) 259-2459
Fax:  (406) 259-2569
russell_hart@fd.org
            Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **Case No. CR-23-103-BLG-SPW** |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| GABRIEL COWAN METCALF, | |
| Defendant. | |

The Defendant has filed a Motion to Dismiss the Indictment.  (ECF-31).  This Brief supports that Motion.

## **INTRODUCTION**

Rule 12(b)(1) of the Federal Rules of Criminal Procedure states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Mr. Metcalf is charged with a single count of

violating 18 U.S.C. §922(q)(2)(A) for allegedly possessing a firearm within a school zone.  He is not otherwise prohibited from possessing a firearm and is not accused of committing any other crime in connection with this allegation.  Dismissal is necessary for two reasons: first, §922(q) does not apply to persons licensed to carry a firearm within a school zone by the laws of the state in which the school zone lies, and Mr. Metcalf was licensed under Montana law at the time of his alleged offense. Additionally, §922(q) is unconstitutional as it is being applied to Mr. Metcalf in this case under the analytical framework established by *New York State Rifle and Pistol Association, Inc.* v. *Bruen*, 142 S. Ct. 2111 (2022).

## BACKGROUND

Mr. Metcalf lives directly across the street from Broadwater Elementary, a public school, in Billings, Montana.  He has been accused of openly carrying a firearm in his yard and on the sidewalk in front of his house, within 1,000 feet of but not on school grounds.  Section 922(q) prohibits "any individual" from possessing a firearm at a place the individual "knows or has reasonable cause to believe" is a "school zone", defined as on the grounds of or "within a distance of 1,000 feet from the grounds of a public, parochial or private school".  18 U.S.C. § 921(a)(26).

The black letter of §922(q)(2)(A) would prohibit Mr. Metcalf and anyone who lives within 1,000 feet of a school's "grounds" from possessing a firearm, even in

their home.  However, §922(q)(2)(B) contains some exceptions to that otherwise broad prohibition.  One of those exceptions allows for possession of a firearm "on private property not part of school grounds".  §922(q)(2)(B)(i).  Another exception to possession of a firearm in a school zone applies to individuals "licensed to do so" by the State or a political subdivision of the State in which the school zone is located.  §922(q)(2)(B)(ii).

The Criminal Complaint filed in this matter (ECF-1) and subsequent public statements by the Department of Justice clarify that, as §922(q) is being applied to Mr. Metcalf, he violated §922(q) when he allegedly stepped from his property onto the public sidewalk; by leaving his "private property" he is alleged to have removed himself from the protections of 18 U.S.C. §922(q)(2)(B)(i).  Assuming this theory does not violate the Second Amendment under the framework of *District of Columbia v. Heller* and *Bruen*, Mr. Metcalf would need to demonstrate that he qualifies for one of the other exceptions enumerated at §922(q)(2)(B).

## I.  Mr. Metcalf meets the exception of 18 U.S.C. § 922(q)(2)(B)(ii)

Section 45-8-359 of Montana Code Annotated explicitly grants, to every person in Montana who has not been convicted of a violent felony crime or who is not otherwise prohibited from possessing a firearm under the Montana Constitution, a "license[ ] and verif[ication] by the State of Montana within the meaning of the

provisions regarding individual licensure and verification in the federal Gun-Free School Zones Act" to possess a firearm:

> In consideration that the right to keep and bear arms is protected and reserved to the people in Article II, section 12, of the Montana constitution, a person who has not been convicted of a violent, felony crime and who is lawfully able to own or to possess a firearm under the Montana constitution is considered to be individually licensed and verified by the state of Montana within the meaning of the provisions regarding individual licensure and verification in the federal Gun-Free School Zones Act.

Mont. Code Ann. § 45-8-360, "Establishment of individual licensure."

This language explicitly appeals to the exception at 18 U.S.C. §922(q)(2)(B)(ii), which states in full:

> Subparagraph (A) does not apply to the possession of a firearm— if the individual possessing the firearm is licensed to do so by the State in which the school zone is located or a political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license.

The next section of the Code, Mont. Code Ann. § 45-8-361, prohibits "possession or allowing possession of a weapon *in a school building*". (emphasis added). While §922(q) applies only to firearms that affect interstate commerce, a "weapon" as used in the Montana law is not specific to firearms and includes a knife with a blade of 4 inches or more, a sword, straight razor, throwing star, nun-chucks, brass knuckles, or "any other article or instrument possessed with the purpose to commit a criminal offense." Mont. Code Ann. § 45-8-361(5)(b).

Montana has (1) verified that any individual who is not prohibited under the laws of Montana or who has not been convicted of a violent felony crime is qualified to receive a license to carry a firearm within a school zone, (2) enacted legislation granting such a license to all verified individuals, (3) explicitly stated that this license applies for purposes of "the federal Gun-Free School Zones Act", and (4) enacted separate legislation that goes farther than §922(q) could under its Commerce Clause authority, prohibiting the possession of any type of "weapon", including a firearm, but only within the school *building* itself.

If Mr. Metcalf stepped from his property onto the public sidewalks while carrying a firearm as the Government alleges, he was licensed to do by the State of Montana at the time, the prohibition of §922(q)(2)(A) does not apply to him, and the Indictment must be dismissed.

## II. Section 922(q) is unconstitutional under *Heller* and *Bruen*

In 1975, the District of Columbia enacted a law criminalizing the carrying of any unregistered firearm within the District while simultaneously prohibiting the registration of handguns, effectively banning them. *District of Columbia v. Heller*, 554 U.S. 570, 574 (2008). Additionally, any lawfully owned firearm (i.e., registered long gun) possessed within the District was required to be "unloaded and dissembled

or bound by a trigger lock or similar device" unless located in a place of business or being used for lawful recreational activities. *Id.*

In *Heller*, the United States Supreme Court considered "whether [the District's] prohibition on the possession of usable handguns in the home violates the Second Amendment to the Constitution". *Id.* at 573. The Court not only found that the prohibition was unconstitutional, it declared that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller* at 635. The Court struck down both the law's complete ban on handguns and its restriction against keeping functional firearms in the home: the complete prohibition on handguns was constitutionally "invalid" for any purpose, and the requirement that any other firearm in the home be rendered and kept inoperable at all times "makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *Id.*, at 630.

While *Heller* established the right to keep a firearm in one's home for the purpose of self-defense, in *United States v. Bruen*, 142 S. Ct. 2111 (2022), the Court determined the right also extended to areas outside the home and emphasized that the right cannot be analyzed using "means-end" scrutiny. *Bruen*, at 2127.

In 1905, New York enacted a law criminalizing the possession of a firearm whether inside or outside the home without a license. In 1911, it enacted a separate

law requiring a government finding of "good moral character" and "proper cause" as prerequisites for an individual obtaining such a license.  *Bruen*, at 2122.

In *Bruen*, the Court reaffirmed the Second Amendment's guarantee of "an individual right to possess and carry weapons in case of confrontation" as articulated in *Heller*, then recognized that "confrontation can surely take place outside the home". *Id*., at 2135.  The Court held that the "proper cause" requirement of the 1911 law violated the Second and Fourteenth Amendments "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms".  *Id.*, at 2156

The Court went on to explain:

the constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense.

*Id*., at 2156 (internal citations omitted)

The *Bruen* Court clarified that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2126.  To justify §922(q) as it is being applied to Mr. Metcalf, the government

"must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*.

### *Heller* and *Bruen* Applied to Mr. Metcalf's Circumstances

Discovery has taken place and demonstrates law enforcement received several complaints about a man carrying a firearm in the yard of a residence directly across the street from Broadwater Elementary School in Billings, Montana over the course of several days in August of 2023.  Law enforcement responded to that address multiple times and typically encountered a male – Mr. Metcalf – standing on the property with a firearm in his possession or nearby.  The investigation revealed Mr. Metcalf lived with his mother at the residence in question and was patrolling his property in response to threats made against him and his mother by a specific individual.  Mr. Metcalf repeatedly spoke to law enforcement about these threats, before and during August of 2023.  His mother had obtained an order of protection and Mr. Metcalf claimed this individual had violated it several times both directly and through third-party contact.[1]

---

[1] This individual is currently pending trial in Yellowstone County for a felony offense of violating an order of protection, the victim being Mr. Metcalf's mother.

Law enforcement repeatedly told Mr. Metcalf they couldn't make him stop what he was doing, but expressed frustration that he would not stop voluntarily.  Mr. Metcalf continued to insist he was the victim of a stalking crime, that law enforcement was not taking his reports seriously, and that he felt his actions were necessary to protect himself and his mother.  He reached out to federal authorities seeking assistance concerning what he perceived as indifference by local law enforcement to his reports.

As the school year approached, Metcalf was called by two ATF agents who represented that they were following up on his call and wished to address his concerns.  They asked him where besides his property he had carried the firearm, eliciting statements that the Government now uses against him.  The agents then expressed their opinion that his actions within his house and in his front yard were constitutionally protected, but that he had violated 18 U.S.C. § 922(q)(2)(A) when he stepped from his property onto the sidewalk in front of his house while carrying his firearm.

There is no evidence Mr. Metcalf carried the firearm outside of the house or his yard following that conversation.  He was arrested a few days later, almost

immediately after the Billings Gazette published an article on its website about the situation.[2]

The Government has not alleged Mr. Metcalf carried a weapon onto the school grounds. This prosecution relies entirely upon Mr. Metcalf allegedly carrying a firearm in the areas immediately outside his private residence, specifically onto the sidewalk. While *Bruen* clearly states such activities are constitutionally protected – above all other concerns, no less – the Indictment claims these actions were illegal because they occurred within 1,000 feet of a school, which was still on summer recess.

## I.      The ban, like those in *Heller* and *Bruen*, is complete and void.

In *Heller*, the Supreme Court held that the Second Amendment protects the right to keep a firearm in the home for self-defense, and that any regulation that requires them to be stored in an inoperable state is "invalid". *Heller*, at 630. In *Bruen*, the Court held that this right extends to areas outside the home and emphasized that the right cannot be analyzed using "means-end" scrutiny. *Bruen*, at 2127. To find relief from the broad prohibition of 922(q)(2)(A), when Mr. Metcalf stepped from

//

---

[2] Billings Gazette, August 22, 2023: "Man with rifle near Broadwater Elementary School isn't breaking law, Billings police say". https://billingsgazette.com/news/local/billings-police-broadwater-elementary-man-with-gun-rifle/article_d144ec32-410d-11ee-bbf5-6fd13809d8ac.html#tracking-source=article-related-bottom

his property onto the sidewalk, his firearm would have to have been rendered inoperable.  18 U.S.C. §922(q)(2)(B)(iii).

When it comes to firearms carried for purposes of self-defense outside the home, 922(q) contains an identical ban to the one flatly struck down in *Heller* when applied to firearms stored inside the home.  In *Bruen,* the Court ruled that regulations concerning firearms carried *outside the home* must be held to the *Heller* standard while unequivocally rejecting the application of any "means-end" scrutiny to justify the regulation.  *Bruen*, at 2129.

The ban prohibiting possession of a functional firearm within 1,000 feet of a school's "grounds" in §922(q)(2)(A) prevents a citizen from using it for self-defense if confrontation happens outside their home.  On its face, §922(q) is impossible to square with the Second Amendment in the post-means-end scrutiny era of *Heller* and *Bruen*.

## II.     The Government must demonstrate §922(q) would have been tolerated at the United States' founding.

Mr. Metcalf's alleged conduct, openly carrying a firearm in public for self-defense, is clearly protected by the plain text of the Second Amendment.  In *Heller*, the Supreme Court made clear that the Second Amendment protects an individual right to possess a firearm unconnected with service in a militia for traditionally lawful purposes, specifically for self-defense within the home.  *Heller*, at 2821-2822.  In

*Bruen*, it held the right extended beyond the home.  *Bruen*, at 2135.  Section 922(q) unquestionably infringes upon the right to carry a firearm for self-defense outside the home, particularly for anyone who lives within 1,000 feet of the grounds of a school. The Government must demonstrate such an infringement would have been tolerated at the time of ratification.

"Because the Second Amendment was adopted in 1791, only those regulations that would have been considered constitutional then can be constitutional now." *United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (quoting *United States v. Price*, 2022 WL 6968457, at *1 (S.D.W.V. Oct. 12, 2022)).  The Second Amendment has always tolerated laws forbidding the carrying of firearms in "sensitive places such as schools and government buildings." *Bruen*, at 2133, quoting *Heller*, 554 U. S., at 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637.  Montana recognizes this and has enacted legislation to prohibit the possession of a firearm within a school building.  Section 922(q), however, broadly serves to extend the "sensitive place" of a school to a distance within 1,000 feet of the school's "grounds", irrespective of any circumstances other than the few enumerated at §922(q)(2)(B).

To justify §922(q)'s infringement as this prosecution applies it to Mr. Metcalf, the Government must "identify a well-established and representative historical analogue" at the time of the Second Amendment's ratification to such a prohibition.

*Bruen*, at 2133.   The regulation is presumed unconstitutional, and Mr. Metcalf believes there is no historical analogue sufficient to justify the prohibition against possessing a weapon near but not on the grounds of a school while it is not in session. In fact, the Supreme Court in *Bruen* and *Heller* flatly rejected the means-end analysis upon which the validity of this regulation must rely.   *Bruen*, 2129.

Schools themselves have historically been treated as "sensitive places" where the Second Amendment tolerates restrictions on the right to bear arms.   However, §922(q) constitutes a legislative extension of the historically recognized "sensitive place" that exists within a school building onto the adjoining school property, and then another 1,000 feet as the crow flies, regardless of what or who exists within that space. The Court is not tasked with determining whether this is sound policy or one justified by a compelling government interest.   Having established that Mr. Metcalf's conduct is covered by the plain text of the Second Amendment, the Government instead bears the burden to establish a historical analogue for such an expansive reading of the "sensitive places" doctrine that was recognized at ratification.

## CONCLUSION

Gabriel Metcalf's decision to arm himself for self-defense on his property struck several Billings residents as peculiar and it alarmed others as the school year approached.   However, those actions on his property were unquestionably protected

by the Second Amendment and fall squarely within the exception of 18 U.S.C. §922(q)(2)(B)(i).

Law enforcement also alleges it observed him on August 12, 2023, and said he stepped onto a sidewalk with the firearm on that date. On an August 17 phone call with ATF agents, Mr. Metcalf said he made his patrols daily. He was informed on this call of the Government's position that his stepping onto any sidewalk, street, or alley with his firearm constituted a violation of §922(q). There is no evidence he left his property with a firearm after that date. This theory of prosecution is precluded by 18 U.S.C. §922(q)(2)(B)(ii) and Mont. Code Ann. §45-8-360, as Mr. Metcalf was licensed and exempt from §922(q)(2)(A)'s broad prohibition.

If the Court reaches the constitutional question, Mr. Metcalf's conduct between August 12 and August 17, 2023, is covered by the plain text of the Second Amendment. Section 922(q) clearly infringes upon the rights enumerated therein. The Government bears the burden of demonstrating that the Second Amendment tolerated similar infringements when it was ratified in 1791.

Counsel for Mr. Metcalf has consulted with the Assistant United States Attorney assigned to this case for the Department of Justice in compliance with Local Rule 12.1. The United States opposes the relief requested by the Motion and this Brief.

RESPECTFULLY SUBMITTED October 10, 2023.

/s/ Russell A. Hart
RUSSELL A. HART
Federal Defenders of Montana
        Counsel for Defendant

## CERTIFICATE OF SERVICE
## L.R. 5.2(b)

      I hereby certify that on October 10, 2023, the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| <u>1, 2</u> | CM-EDF |
| ___ | Hand Delivery |
| <u> 3 </u> | Mail |
| ___ | Overnight Delivery Service |
| ___ | Fax |
| ___ | E-Mail |

1.     CLERK, UNITED STATES DISTRICT COURT

2.     THOMAS GODFREY
        Assistant United States Attorney
        United States Attorney's Office
        2601 2nd Avenue North, Suite 3200
        Billings, MT  59101
               Counsel for the United States.

3.     GABRIEL COWAN METCALF
        Defendant

              /s/ Russell A. Hart
              RUSSELL A. HART
              Federal Defenders of Montana
                 Counsel for Defendant